# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 17-830V
### Filed: January 31, 2019
UNPUBLISHED

---

DEANNA WILLIAMS,

                  Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

                  Respondent.

Special Processing Unit (SPU); Fact
Ruling; Ruling on Entitlement; Table
Injury; Influenza (Flu) Vaccine;
Shoulder Injury Related to Vaccine
Administration (SIRVA)

---

*Shealene Priscilla Wasserman, Muller Brazil, LLP, Dresher, PA, for petitioner.*
*Ryan Daniel Pyles, U.S. Department of Justice, Washington, DC, for respondent.*

## FINDING OF FACT AND RULING ON ENTITLEMENT[1]

**Dorsey**, Chief Special Master:

On June 20, 2017, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.,*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of her October 22, 2014 Influenza ("flu") vaccination. Petition at 1-2. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons described below, the undersigned finds that petitioner is entitled to compensation.

---

[1] The undersigned intends to post this decision on the United States Court of Federal Claims' website. **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished decision contains a reasoned explanation for the action in this case, undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.      Procedural History

In the petition filed on June 20, 2017, Ms. Williams asserted that she sustained a left shoulder injury resulting from a flu vaccination on October 22, 2014.  Petition at 1. In support of her petition, Ms. Williams filed medical records (Exs. 1-3) and an affidavit (Ex. 4).  ECF No. 1.  During the initial status conference held on July 24, 2017, petitioner agreed to file any outstanding medical records and any additional records documenting her October 22, 2014 vaccination.  ECF No. 9.  Petitioner also agreed to file an affidavit addressing her delay in seeking treatment for her left shoulder pain and explaining why she did not report her shoulder pain at a February 25, 2015 visit to her primary care provider.  *Id.*

Petitioner subsequently filed additional medical records (Ex. 5) and a detailed affidavit (Ex. 6).  ECF Nos. 11-12.  Petitioner confirmed that no additional vaccination records were filed.  *See* Informal Communication (Remark) filed October 20, 2017.  In October and November 2017, petitioner filed additional affidavits from Stefan Fujczak, Daniel Torres, and Cindy Garcia (Exs. 7-9).  ECF Nos. 15-17.

On January 5, 2018, respondent filed a status report noting that petitioner had not filed additional documentation regarding her vaccine administration.  ECF No. 20. Respondent requested a January 23, 2018 deadline to file a Rule 4(c) Report and indicated that he would not entertain settlement on the current record.  *Id.*

Respondent filed his Rule 4(c) Report on January 19, 2018.  ECF No. 21.  In respondent's view, petitioner had provided insufficient proof of vaccine administration. *Id.* at 3.  Respondent further argued that, even if petitioner received a flu vaccination on October 22, 2014, she still had not established entitlement to compensation.  *Id.* at 4. Specifically, respondent contended that there were "insufficient records substantiating that the onset of petitioner's left shoulder symptoms began within forty-eight hours of vaccination" and a lack of documentation as to the site of vaccination.  *Id.*

At a status conference held on February 8, 2018, the parties indicated that they were amenable to conducting a fact hearing to resolve the issues regarding petitioner's alleged October 22, 2014 flu vaccine administration and the onset of her shoulder injury. ECF No. 24.

On March 1, 2018, the undersigned scheduled a fact hearing for April 17, 2018, in Washington, D.C., and stipulated that petitioner and her counsel would participate via video conference.  *Id.*  In an e-mail dated March 1, 2018, respondent indicated that he did not plan to call any witnesses.  *See* Informal Communication (Remark) filed March 12, 2018.  Petitioner indicated on March 21, 2018 that she would testify at the hearing

but did not plan to call any other witnesses.  ECF No. 26.  Petitioner also filed an affidavit from Winona Henebry on March 21, 2018 (Ex. 10).  ECF No. 27.

A fact hearing was held on April 17, 2018.  *See* Minute Entry filed April 17, 2018. In a scheduling order filed April 19, 2018, petitioner was ordered to file a complete set of orthopedic and physical therapy records, petitioner's pain diary, and a status report indicating the date by which petitioner anticipated providing a letter regarding the amount of her Medicaid lien.  ECF No. 28.

Petitioner filed her pain diary (Ex. 11) on April 23, 2018.  ECF No. 29.  Petitioner filed additional physical therapy records (Ex. 12) on July 19, 2018.  ECF No. 38. Petitioner filed updated orthopedic records (Ex. 13) and an amended Statement of Completion on August 20, 2018.  ECF Nos. 40-41.

On October 30, 2018, the undersigned filed a scheduling order noting petitioner filed a Statement of Completion indicating that she beieved all of the relevant medical records have been submitted.  ECF No. 42.  The scheduling order informed the parties that the undersigned anticipated issuing a ruling on whether petitioner is entitled to compensation in this case.  *Id.*  The undersigned granted the parties until November 30, 2018 to file any further evidence in regard to petitioner's entitlement to compensation. *Id.*  No additional evidence was filed.

## II.    Relevant Factual History

On October 22, 2014, petitioner presented for an appointment at her primary care provider.  Ex. 1 at 25.  She was noted to have a history of diabetes, musculoskeletal pain involving the right ankle, and snoring with associated sleep apnea, excessive fatigue, and daytime somnolence.  *Id.*  The office visit record reflects an entry of "Influenza, seasonal, injectable" under the "Orders" section of the record.  *Id.* at 29.

On November 19, 2014, petitioner returned to her primary care provider for lab work.[3]    Ex. 5 at 95.   The associated treatment record does not contain an entry for a shoulder condition under the "Problem List" section, but documents entries for petitioner's preexisting conditions, including obesity, asthma, left knee pain, snoring, diabetes mellitus, herpes-simplex virus 2 infection, and degenerative joint disease involving multiple joints.  *Id.*

On February 25, 2015, petitioner presented for a follow-up diabetes appointment at her primary care provider.[4]  Ex. 1 at 17.  The "Review of Systems" section of the

---

[3] Petitioner presented to her primary care provider again on March 11, 2015 for lab work.  Ex. 5 at 107. The associated treatment record lists the purpose of the visit as "Lab only" and does not contain sections for petitioner's current medical complaints, review of systems, or physical examination.  *Id.*

[4] Approximately two weeks prior to this appointment, petitioner presented for a diabetic screening appointment with an optometrist at Santa Clara Valley Medical Center Eye Clinic.  Ex. 2 at 1.  The associated medical record reflects complaints of blurry vision; however, petitioner was observed to have a normal visual examination.  *Id.*

treatment record contains an entry of "Negative" for musculoskeletal complaints. *Id.* at 19. On examination, the physician observed that a visual overview of petitioner's extremities was normal. *Id.* at 20.

On March 17, 2015, petitioner presented for an evaluation of possible obstructive sleep apnea at HHS Santa Clara Valley Medical Center. Ex. 2 at 1-5. The progress note does not reflect any complaints of shoulder symptoms. *Id.* On examination, petitioner was observed to appear "well" and in no distress. *Id.* at 4.

On March 19, 2015, petitioner presented for a follow-up lab and diabetes appointment at her primary care provider. Ex. 5 at 112. The associated treatment record does not contain an entry for a shoulder condition under the "Problem List" section. *Id.* The "Review of Systems" section contains an entry of "Negative" for musculoskeletal complaints. *Id.* at 114.

On April 6, 2015, petitioner presented at her primary care provider with complaints of musculoskeletal pain and spasms. Ex. 1 at 10. Petitioner specifically reported that she had experienced "left shoulder pain that [had] become progressively worse since receiving [a] flu shot at the end of October." *Id.* Petitioner explained that her pain affected her left dominant extremity and described her symptoms as worsening with lifting. *Id.* On examination, petitioner was observed to have left shoulder tenderness, pain with lifting her arm over her head, and pain with rotation of her arm. *Id.* at 13. The physician assistant assessed petitioner with "left shoulder pain" and suggested an over-the-counter NSAID for pain relief. *Id.* Additionally, petitioner was referred for an MRI of her left shoulder. *Id.*

A June 1, 2015 MRI of petitioner's left shoulder revealed "moderate to severe tendinosis of the supraspinatus, infraspinatus, and subscapularis tendons." Ex. 5 at 135. Other findings included "small" effusion, moderate to severe osteoarthritis of the acromioclavicular joint, and "small subacromial subdeltoid bursal fluid." *Id.* The imaging report noted "[f]eatures which may indicate predisposition to subacromial impingement." *Id.*[5]

On July 17, 2015, petitioner returned to her primary care provider with complaints of left shoulder pain that had been ongoing for nine months. Ex. 1 at 4. She stated that she had experienced mild worsening since her last medical appointment and again reported increased pain with lifting. *Id.* On examination, petitioner presented with positive cross body testing, positive lift off testing, and abnormal strength testing. *Id.* at

---

[5] In SIRVA, "symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction." 42 C.F.R. § 100.3(c)(10). "SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (*e.g.*, tendons, ligaments, bursae, etc.)." *Id.* Petitioner's June 2015 MRI findings appear to be consistent with an injury to the bursa caused by an intramuscular injection as reported by S. Atanasoff, et al., in *Shoulder injury related to vaccine administration (SIRVA)*, 28 Vaccine 8049 (2010).

7.  Petitioner's treating physician assessed her as having a "rotator cuff injury" and referred her for physical therapy and an orthopedic surgery consultation.  *Id.* at 8.

On October 6, 2015, petitioner was evaluated by an orthopedist at HHS Santa Clara Valley Medical Center.  Ex. 2 at 11.  At that time, petitioner complained of left shoulder pain that had lasted for one year and identified her pain as beginning after she received a flu shot.  *Id.*  Petitioner reported associated difficulty with performing overhead activity and reaching.  *Id.*  Petitioner also complained of having pain at night, but noted that she experienced moderate symptom relief with over-the-counter NSAIDs.  *Id.*  On examination, petitioner presented with tenderness to palpation of the left shoulder, 170 degrees of flexion, 50 degrees of external rotation, mildly positive Neer's and Hawkin's testing, and normal strength.  *Id.*  The orthopedist diagnosed petitioner with left shoulder rotator cuff tendonitis and advised her to continue taking NSAIDs.  *Id.*  The orthopedist also referred petitioner for physical therapy and discussed adding injections to her course of treatment if her symptoms did not improve.  *Id.*

On October 27, 2015, petitioner presented for an initial evaluation at San Jose Physical Therapy.  Ex. 3 at 1.  She rated her pain as ranging from "4" to "7" out of "10" and reported that it worsened with lifting, carrying, and sleeping on her left side.  *Id.*  She added that her pain had limited her ability to perform work as a massage therapist.  *Id.*  Petitioner attended a total of seven physical therapy sessions from October 27, 2015 through January 8, 2016.  *Id.* at 1-30.  In a discharge summary dated January 8, 2016, petitioner was recorded as rating her pain as a "1" out of "10."  *Id.* at 28.  She commented that she had experienced "perceived improvement" of 75%.  *Id.*  The physical therapist recorded improvement of petitioner's left shoulder strength and range of motion.  *Id.*  Petitioner was discharged to an independent home exercise program.  *Id.* at 30.

On March 2, 2016, petitioner presented to her primary care provider for treatment of a genitourinary condition.  Ex. 5 at 240.  The associated medical record contains an entry of "Influenza, seasonal, injectable" with a "date given" of October 22, 2014 under the "Immunization History" section of the record.  *Id.* at 243.

On September 20, 2016, petitioner returned to her primary care provider for a follow-up appointment regarding her musculoskeletal pain.  *Id.* at 431.  She again reported that she "started having the left shoulder pain after receiving the flu vaccine in 2014."  *Id.*  On examination, petitioner presented with tenderness of the left shoulder with positive cross body and lift off testing.  *Id.* at 434.  Petitioner's treating physician assessed tendinopathy of the rotator cuff and referred her for an orthopedic surgical consultation.  *Id.* at 435.

On December 8, 2016, petitioner was evaluated by an orthopedist at HHS Santa Clara Valley Medical Center.  Ex. 13 at 2-3.  Petitioner reported that she had been experiencing left shoulder pain for two years that had started after she received a flu shot.  *Id.* at 3.  Petitioner was administered an epidural steroid injection.  *Id.*

On February 28, 2017, petitioner presented to her primary care provider for treatment of a genitourinary condition.  Ex. 5 at 414.  The associated record contains an entry of "Influenza, seasonal, injectable" with a "date given" of October 22, 2014 under the "Immunizations History" section of the record.  *Id.* at 419.

On March 13, 2017, petitioner presented for a follow-up shoulder appointment with her primary care provider.  *Id.* at 443.  At that time, petitioner noted that her left shoulder symptoms had improved following an injection in December 2016; however, she indicated that her pain had subsequently returned.  *Id.*  Petitioner added that she believed her shoulder pain was caused by a flu shot she received in 2014.  *Id.*  Petitioner inquired whether she could return for further orthopedic treatment.  *Id.*  The physician assistant indicated that she would seek information regarding whether a new referral was necessary.  *Id.* at 445.  The available record does not contain evidence of further medical treatment related to petitioner's alleged shoulder injury.

### III.  Affidavits Filed by Petitioner

On June 20, 2017, petitioner filed an affidavit pursuant to § 11(c)(1).  Ex. 4.  In her affidavit, petitioner asserted that she suffered a left shoulder injury caused by the flu vaccine she received on October 22, 2014.  *Id.* at ¶¶2-4.  Petitioner averred that she suffered the residual effects of her injury for more than six months and had not received an award or settlement for the injury.  *Id.* at ¶¶4-5.

On September 29, 2017, petitioner filed a more detailed affidavit.  Ex. 6.  She again averred that she was administered a flu vaccine in her left shoulder on October 22, 2014.  Ex. 6 at ¶2.  Following the vaccination, petitioner noted that she immediately felt pain at the injection site.  *Id.* at ¶3.  She indicated that her pain continued over the subsequent months, "but did not become severe until the following spring."  *Id.*  Petitioner averred that she informed her medical providers regarding her pain on November 19, 2014, February 25, 2015, and March 19, 2015; however, she alleged that these providers "did not believe [her] and dismissed [her] complaints."  *Id.* at ¶¶4-6.  Petitioner noted that her reports of left shoulder symptoms were first taken seriously on April 6, 2015, at which time her medical provider ordered an MRI of her left shoulder.  *Id.* at ¶7.

In October and November 2017, petitioner filed additional affidavits from Stefan Fujczak (her friend), Daniel Torres (her friend), and Cindy Garcia (her friend).  Exs. 7-9.  In his affidavit, Mr. Fujczak noted that, prior to her flu vaccination in October 2014, petitioner had "never complained of soreness, pain, or difficulty using her left arm or shoulder."  Ex. 7 at ¶4.  Mr. Fujczak recounted an episode from October 2014 in which he was present at petitioner's home and was asked by petitioner to carry a case of water up her stairs.  *Id.* at ¶5.  According to Mr. Fujczak, petitioner stated that she had received a flu shot and had soreness in the area of the vaccination.  *Id.*  Mr. Fujczak recalled that petitioner "would not stop complaining about her left arm being in pain because she was left handed."  *Id.*

In his affidavit, Mr. Torres recounted an episode from a "few years ago" in which he was present at petitioner's house to help her prepare for a home inspection.  Ex. 8 at ¶4.  At that time, Mr. Torres observed that petitioner appeared to be in pain.  *Id.* According to Mr. Torres, petitioner told him that she was experiencing left upper extremity pain and had previously sought medical treatment; however, petitioner claimed that her medical provider "dismissed her complaints" and "did not believe her." *Id.* at ¶5.  Mr. Torres averred that petitioner had not previously "complained of pain or difficulty using her left arm or shoulder."  *Id.* at ¶7.

In her affidavit, Ms. Garcia recounted an episode from December 12, 2014 in which she and petitioner organized a birthday party for a mutual friend.  Ex. 9 at ¶5. Ms. Garcia recalled that petitioner asked her to carry wine and groceries from her car due to petitioner's shoulder pain.  *Id.*  During the party, Ms. Garcia observed that petitioner appeared "miserable."  *Id.* at ¶6.  According to Ms. Garcia, petitioner explained that she was experiencing shoulder pain and eventually left early from the gathering.  *Id.*  Ms. Garcia noted that, prior to December 2014, petitioner had never complained of pain or difficulty using her left arm or shoulder.  *Id.* at ¶4.

On March 21, 2018, petitioner filed an affidavit from Winona Henebry, her friend. Ex. 10.  Ms. Henebry averred that she spoke with petitioner by phone on October 23, 2014.  *Id.* at ¶5.  Ms. Henebry explained that she remembered the specific date because she recalled speaking to petitioner a few days prior to her October 25, 2014 birthday to make plans.  *Id.*  During the call, Ms. Henebry recounted that petitioner told her she had been administered a flu shot and was experiencing left arm pain.  *Id.*  Ms. Henebry averred that petitioner continued to complain of left arm pain during her birthday dinner at Spaghetti Factory the following weekend.  *Id.* at ¶6.  Thereafter, Ms. Henebry noted that petitioner complained "all the time" about her pain.  *Id.* at ¶7.  Ms. Henebry recounted a specific conversation "around Thanksgiving" during which petitioner stated that her physician did not believe her regarding her complaints of left arm pain.  *Id.*  Ms. Henebry noted that petitioner had not complained of pain or difficulty using her left arm or shoulder prior to October 22, 2014.  *Id.* at ¶4.

## IV.    Testimony by Petitioner

At the fact hearing held in Washington, D.C., on April 17, 2018, (*see* Transcript of Proceedings ("Tr.") at ECF No. 33), petitioner provided testimony regarding her alleged October 22, 2014 vaccination, the onset of her injury, and her course of treatment.

Petitioner explained that she was scheduled for a primary care appointment on October 22, 2014 to obtain approval for a gastric bypass surgery.  Tr. at 8.  During her appointment, petitioner testified that a nurse offered to administer a flu shot, which she accepted.  Tr. at 9.  Petitioner stated that the nurse appeared to administer the vaccine at a high location on her left upper extremity.  Tr. at 9.

Petitioner testified that she felt a sharp, throbbing pain immediately following her receipt of the flu vaccine. Tr. at 9-10. During the following days, she noted that the pain grew deeper and began to radiate from the site of injection downward through her arm. Tr. at 11. Petitioner testified that she reported her pain and other symptoms to her mother and Winona Henebry approximately one or two days following the vaccination. Tr. at 11-12. Thereafter, petitioner recounted that she experienced persistent pain until February or March 2015, at which point her symptoms worsened. Tr. at 13-14. Petitioner explained that, in addition to her preexisting symptoms, she began to experience spasms in her left upper extremity during these months. Tr. at 13-14. Petitioner testified that her left shoulder pain also affected her activities of daily living. Tr. at 12. Among other things, she noted that her shoulder injury necessitated assistance from her friends with housekeeping and carrying items up and down the stairs. Tr. at 12.

Petitioner testified that she reported left shoulder symptoms to her medical providers prior to April 6, 2015—the date on which her medical records first reflect complaints of shoulder pain. Tr. at 14-17. Specifically, petitioner indicated that she complained of left shoulder symptoms at medical appointments on November 19, 2014, February 25, 2015, and March 19, 2015. Tr. at 14-17. In general, petitioner testified that her medical providers dismissed her complaints during those appointments and did not follow up with further examinations. Tr. at 14-17. Petitioner noted that she probably did not reference her shoulder condition other than in passing at a sleep clinic evaluation on March 17, 2015 because her shoulder symptoms did not have any bearing on the medical issue at hand. Tr. at 17-18.

Petitioner testified that she did not seek urgent or emergency care following her vaccination because she underestimated the severity of her injury. Tr. at 18. She explained that she eventually sought specific treatment for her left shoulder on April 6, 2015 because her pain had started to worsen and she was beginning to experience spasms. Tr. at 18. Petitioner also noted that, at prior medical appointments, she was told that she needed to make a specific appointment for her left shoulder pain in order to receive dedicated treatment for that condition. Tr. at 18-19.

## V.   Respondent's Opposition

Respondent filed a Rule 4(c) Report on January 19, 2018. *See* Respondent Rule 4(c) Report ("Res. Report"), filed January 19, 2018 (ECF No. 21). Initially, respondent argues that petitioner has not established proof of vaccination. *Id.* at 3-4. Respondent notes that petitioner was previously ordered to file a more detailed vaccination record but failed to provide additional evidence. *Id.* As a result, respondent contends that the "proof of vaccine administration is insufficient on the current record." *Id.* at 3.

Respondent further argues that, even if the site of vaccination could be established, petitioner has not provided sufficient evidence to support her SIRVA claim. *Id.* at 4-5. Respondent specifically contends that "in addition to a lack of documentation

of the site of vaccination" there are insufficient records to substantiate that the onset of petitioner's left shoulder symptoms began within 48 hours of vaccination.  *Id.* at 4. Respondent notes that petitioner's medical records reflect four medical encounters in the months after her alleged vaccination that do not reference shoulder complaints.  *Id.* at 4-5.  Respondent asserts that petitioner first attributed her shoulder pain to the vaccination five-and-a-half months after the alleged vaccination.  *Id.* at 5.  Given the aforementioned issues, respondent requests that this case be dismissed.  *Id.*

## VI.    Findings of Fact

Before ruling on entitlement in this case, the undersigned must make the following factual determinations: (1) whether petitioner was administered an influenza vaccine on October 22, 2014 in her injured left arm and (2) whether petitioner's shoulder symptoms began within 48 hours of her alleged vaccination.

When making these factual findings, the undersigned adheres to the preponderance of evidence standard as set forth in Section 13(a)(1)(A) of the Vaccine Act.  Under that standard, the existence of a fact must be shown to be "more probable than its nonexistence."  *In re Winship*, 397 U.S. 358, 371 (1970) (Harlan, J., concurring).

Pursuant to Section 13(b)(2) of the Vaccine Act, the undersigned may find that the first symptom or manifestation of onset of an injury described in a petition occurred within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded if such finding is otherwise supported by a preponderance of the evidence.

### A.  Finding of Fact Regarding Receipt and Site of Flu Vaccination

Upon review of the entire record and consideration of the parties' contentions, the undersigned finds that there is preponderant evidence that petitioner received a flu vaccination on October 22, 2014 in her left shoulder.  Contrary to respondent's argument, petitioner has filed substantial evidence that a flu vaccine was administered in her left shoulder on that date.

Initially, an office visit record from petitioner's primary care provider dated October 22, 2014 reflects an entry of "Influenza, seasonal, injectable" under the "Orders" section of the record.  Ex. 1 at 29.  As indicated above, subsequent records from petitioner's primary care provider on March 2, 2016 and February 28, 2017 contain entries of "Influenza, seasonal, injectable" with a "date given" of October 22, 2014 under the "Immunization History" section of the records.  Ex. 5 at 243, 419.  Considered together, the aforementioned medical records reflect substantial evidence that petitioner received a flu vaccination on October 22, 2014.[6]

---

[6] The undersigned notes, however, that several prior decisions within this program have held that the fact of vaccination need not be supported by medical records or opinion pursuant to Section 13(a) of the Vaccine Act.  *See, e.g., Centmehaiey v. HHS*, 32 Fed. Cl. 612, 621 (1995), *aff'd* 73 F.3d 381 (Fed. Cir.

In addition, petitioner's treatment records consistently attribute her left shoulder symptoms to a flu vaccination she received in October 2014.  These medical records provide strong corroborating evidence that petitioner received a flu vaccination in her left shoulder on October 22, 2014.  *See, e.g.*, Parker v. HHS, No. 15-1331V, 2016 WL 3443929 (Fed. Cl. Spec. Mstr. May 13, 2016) (finding that a vaccine record recording administration in the left arm was incorrect based primarily on petitioner's consistent attribution of his right shoulder condition to his vaccination throughout his treatment). Notably, at petitioner's medical appointment on April 6, 2015 in which she first received dedicated treatment for her left shoulder symptoms, petitioner specifically reported that she had experienced "left shoulder pain that [had] become progressively worse since receiving [a] flu shot at the end of October."  Ex. 1 at 10.  Thereafter, petitioner consistently attributed her left shoulder injury to a flu vaccination from the same period. *See, e.g.*, Exs. 2 at 11; 5 at 431, 443; 13 at 3.

The undersigned also found petitioner to be a highly credible witness whose testimony was corroborative of the aforementioned medical records regarding the date and location of her flu vaccination.  Moreover, petitioner filed affidavits from her acquaintances that credibly recount statements made by petitioner in the days and weeks after October 22, 2014 in which she linked her sudden-onset left shoulder symptoms to an earlier flu shot.  Exs. 7 at ¶¶4-5; 10 at ¶¶4-5.  Based on all of the above, the undersigned finds that there is preponderant evidence that petitioner received a flu vaccination on October 22, 2014 in her left shoulder.

## B. Finding of Fact Regarding Onset

Upon review of the entire record and consideration of the parties' contentions, the undersigned finds that there is preponderant evidence that petitioner's alleged shoulder symptoms occurred within 48 hours of petitioner's October 22, 2014 flu vaccination.

As described above, petitioner credibly testified at the fact hearing that she felt a sharp, throbbing pain immediately following her receipt of the flu vaccine on October 22, 2014.  Tr. at 9-10.  During the following days, she noted that the pain grew deeper and began to radiate from the site of injection downward through her arm.  Tr. at 11. Petitioner's testimony is corroborated by her post-vaccination medical records.  Indeed, at petitioner's medical appointment on April 6, 2015, she specifically reported "left

---

1995) (stating that "[t]he lack of contemporaneous, documentary proof of a vaccination, however, does not necessarily bar recovery."); *see also Wonish v. HHS*, No. 90-667V, 1991 WL 83959, at *4. (Fed. Cl. Spec. Mstr. May 6, 1991) (stating that "[v]accination is an event that in ordinary litigation could be established by lay testimony. Medical expertise is not typically required."); *Woodson v. HHS*, No. 91-263V, 1992 WL 59707, at *2. (Fed. Cl. Spec. Mstr. Mar. 5, 1992) (finding that "the petition should not be dismissed *as a matter of law* merely because there is no documentary evidence that the vaccination took place and [petitioner] is the only witness claiming personal knowledge of the vaccination.  Her testimony on this point must be weighed in the context of the entire record.").   In any event, the undersigned has found medical records corroborating petitioner's allegations.

shoulder pain that [had] become progressively worse since receiving [a] flu shot at the end of October." Ex. 1 at 10.  The undersigned finds this notation to be corroborating evidence that petitioner's shoulder pain began on October 22, 2014 and worsened in the following months.  At subsequent medical appointments, petitioner explicitly linked her left shoulder pain as beginning after her receipt of a flu vaccination.  *See, e.g.*, Exs. 2 at 11; 5 at 431, 443; 13 at 3.

Respondent notes that petitioner's medical records reflect four intervening medical encounters between October 22, 2014 and April 6, 2015 that do not reference shoulder complaints.[7]  Res. Report at 4-5.  However, the undersigned finds that the relevant medical records, when reviewed in conjunction with petitioner's testimony, provide a plausible and credible explanation for this omission.  Initially, the undersigned notes that the medical record for petitioner's November 19, 2014 appointment lists the purpose of the visit as "Lab only" and does not contain sections for petitioner's current medical complaints, review of systems, or physical examination. Ex. 5 at 95.  Furthermore, petitioner's medical appointments on February 25, March 17, and March 19, 2015 were for specific medical concerns unrelated to petitioner's left shoulder condition.  Exs. 1 at 17; 2 at 1-5; 5 at 112.

Although the aforementioned treatment records do not contain any references to shoulder complaints, petitioner credibly testified that she did, in fact, report left shoulder symptoms to her medical providers on November 19, 2014, February 25, 2015, and March 19, 2015.[8]  Tr. at 14-17.  Petitioner testified that her medical providers dismissed her complaints during those appointments and did not follow up with further examinations.[9]  Tr. at 14-17.  In this case, the undersigned is persuaded that petitioner's detailed testimony is in harmony with the contemporaneous records and provides additional credible statements regarding her condition that are absent or omitted from the medical records.

Finally, although petitioner did not seek dedicated treatment for her left shoulder injury until April 6, 2015—approximately five-and-a-half months following her October 22, 2014 vaccination—the undersigned does not find the delay in treatment to be dispositive regarding the issue of onset.  Indeed, as described above, petitioner testified that she did not seek urgent or emergency care following her vaccination because she underestimated the severity of her injury.  Tr. at 18.  She noted that she eventually

---

[7] In the "Facts" section of Respondent's Rule 4(c) report, respondent specifically cites petitioner's medical appointments on November 19, 2014 and February 25, March 17, and March 19, 2015.  *See* Res. Report at 2.

[8] During the hearing, petitioner specifically testified that she probably did not reference her shoulder condition other than in passing at a sleep clinic evaluation on March 17, 2015 because her shoulder symptoms did not have any bearing on the medical issue at hand.  Tr. at 17-18.

[9] As described above, Mr. Torres and Ms. Henebry also recounted in their affidavits that petitioner told them that her medical provider had dismissed her initial reports of left shoulder symptoms.  *See* Exs. 8 at ¶5; 10 at ¶7.

sought dedicated treatment for her left shoulder on April 6, 2015 because her pain had started to worsen and she had begun to experience spasms.  Tr. at 18.  Petitioner also explained that, at prior medical appointments, she was told that she needed to make a specific appointment for her left shoulder pain in order to receive dedicated treatment for that condition.  Tr. at 18-19.  In the undersigned's experience, petitioner's sworn testimony and medical records together reflect a pattern of treatment consistent with, and similar to, other SIRVA claims.

In light of all of the above and in view of the record as a whole, the undersigned finds that there is preponderant evidence that petitioner's alleged shoulder symptoms occurred within 48 hours of petitioner's October 22, 2014 flu vaccination.

## VII.    Ruling on Entitlement

In light of the above findings of fact, the undersigned further finds that this case is ripe for adjudication on the question of petitioner's entitlement to compensation for her alleged SIRVA.  For the reasons described below, the undersigned finds that petitioner is entitled to compensation.

### A.  Legal Standard

Effective for petitions filed beginning on March 21, 2017, SIRVA is an injury listed on the Vaccine Injury Table ("Table").  *See* Vaccine Injury Table: Qualifications and Aids To Interpretation. 42 C.F.R. § 100.3(c)(10).  A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; (ii) Pain occurs within the specified time-frame; (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

*Id.*  The time period by which the symptomatology must begin is within 48 hours of vaccination.  *Id.* at § 100.3(a)(XIV)(B).

### B.  The Elements of Petitioner's SIRVA Claim

The undersigned's findings and conclusions are as follows:

> **1.   Petitioner did not have a history of pain, inflammation, or dysfunction of the affected shoulder prior to vaccine intramuscular administration**

The undersigned reviewed Ms. Williams's medical history prior to her October 22, 2014 flu vaccination.  Petitioner did not have a history of pain, inflammation, or

dysfunction of her left shoulder prior to vaccination.  Thus, petitioner satisfies this criterion.

### 2.  Onset occurred within the specified time frame

As described in Section (VI)(B) above, based upon the undersigned's review of the entire record and consideration of the parties' contentions, the undersigned finds that there is preponderant evidence that petitioner's alleged shoulder symptoms occurred within 48 hours of her October 22, 2014 flu vaccination.

### 3.  Pain and reduced range of motion were limited to the shoulder in which the intramuscular vaccine was administered

Petitioner reported on April 6, 2015 that she had experienced "left shoulder pain that [had] become progressively worse since receiving [a] flu shot at the end of October."  Ex. 1 at 10.  Petitioner reported that her pain affected her left dominant extremity and described her symptoms as worsening with lifting.  *Id.*  On examination, petitioner was observed to have left shoulder tenderness, pain with lifting her arm over her head, and pain with rotation of her arm.  *Id.* at 13.

Thereafter, as described above, petitioner reported left shoulder pain at multiple medical appointments.  *See, e.g.*, Exs. 1 at 4; 2 at 11; 3 at 1; 5 at 431, 443; 13 at 3.  On several examinations, petitions was observed to have reduced range of motion of the left shoulder.  *See, e.g.*, Exs. 2 at 11; 5 at 198; 13 at 3.  Based upon the undersigned's review of the record, petitioner's pain and reduced range of motion were limited to the left shoulder during the period at issue.

### 4.  No other condition or abnormality was present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy)

There is no evidence in the record that demonstrates any other type of condition or abnormality was present that would explain petitioner's symptoms.

### C.  Factors Unrelated to Vaccination

Respondent has not asserted, nor would the undersigned find, that there is any evidence in the record to support respondent's burden of establishing an alternative cause for petitioner's injury unrelated to vaccination.

## VIII.  Conclusion

In light of all of the above and in view of the record as a whole, the undersigned finds that (1) petitioner received an influenza vaccination in her left upper extremity on October 22, 2014; (2) the onset of petitioner's left shoulder symptoms occurred within 48 hours of vaccine administration; and (3) that petitioner has established the Table requirements for a SIRVA caused by her October 22, 2014 vaccination.  For the

reasons described above, the undersigned finds that petitioner is entitled to compensation.

**IT IS SO ORDERED.**

<u>**s/Nora Beth Dorsey**</u>
Nora Beth Dorsey
Chief Special Master